UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANILYN ROSE,<br><br>   Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security[1]<br><br>   Defendant. | 1:12-cv-771 GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Janilyn Rose seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Income payments under Title XVI of the Social Security Act. The matter is pending before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

///

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 10 & 20.

1

**THE ADMINISTRATIVE PROCEEDINGS**

**1. Procedural History**

On September 23, 2008, Plaintiff filed an application for Supplemental Security Income payments, alleging disability beginning December 21, 2007. AR 94.[3] Plaintiff's application was denied initially and on reconsideration; Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). AR 34-37; 41-46. ALJ Robert A. Evans held a hearing on July 28, 2010, and issued a decision on October 22, 2010 finding Plaintiff was not disabled and denying benefits. AR 11-19. On March 13, 2012, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. AR 1-6.

**2. The Disability Determination Standard and Process**

A claimant is "disabled" for purposes of entitlement to disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 423(d)(1)(A); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

The Commissioner utilizes a "five-step sequential evaluation process" to assess whether a claimant is disabled. 20 C.F.R. §§ 416.920(a)-(f). At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and the claim must be

---

[3] References to the Administrative Record are designated as "AR," followed by the appropriate page number.

2

denied. § 416.920(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or medically equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving that she is unable to perform past relevant work (*i.e.*, in steps one through four of the analysis). *Drouin*, 966 F.2d at 1257; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the claimant meets that burden, a *prima facie* case of disability is established. *Id*. In that event, or if the claimant has no past relevant work, the Commissioner then, in the fifth and final step of the sequential analysis, bears the burden of establishing that the claimant is not disabled because she can perform other substantial, gainful work available in the national economy. § 416.920(a)(4)(v); *Drouin*, 966 F.2d at 1257.

### 3. The ALJ's Findings and Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 11-16. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 23, 2008, the disability application date. AR 13. Further, the ALJ identified abdominal pain, depression, and anxiety as severe impairments. AR 13. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments, or combination of impairments, did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC "to perform medium work." AR 13. The ALJ next found that Plaintiff "is capable of performing past relevant work as a sales administrator and peer advisor" both as it is actually and generally performed. AR 16. The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since September 23, 2008, the date the application was filed." AR 16.

Plaintiff now argues that the ALJ committed legal error because his decision fails to reference a letter from Marriage and Family Therapist ("MFT") Robert Stuckey, who recommended that Plaintiff "should be on disability." AR 411; Doc. 10, pp. 7-10. Plaintiff further argues that the ALJ committed legal error because he failed to provide clear and convincing reasons, supported by substantial evidence in the record, for discrediting Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms. Doc. 10, pp. 10-15.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

///

///

**DISCUSSION**

**1.  The ALJ's Failure to Reference MFT Robert Stuckey's Letter in his Decision**

*A.    Legal Standards for Evaluating a Therapist's Opinion*

A person is considered "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). Furthermore, in order for a person to qualify for benefits, the impairment(s) at issue must result from "anatomical, physiological, or psychological abnormalities *which are demonstrable* by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3) (emphasis added); *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The existence of a medically determinable impairment may be established based only on evidence from "acceptable medical sources" (e.g., licensed physicians and psychologists). 20 C.F.R. § 416.913(a). Moreover, only "acceptable medical sources" can provide "medical opinions." 20 C.F.R. § 927(a)(2). Finally, only an "acceptable medical source" can be considered a treating source, as defined in 20 C.F.R. § 416.902, whose medical opinion may be entitled to controlling weight. 20 C.F.R. § 416.927(d).

In addition to opinions from "acceptable medical sources," however, the Commissioner "may also use evidence from other sources to show the *severity* of [of a claimant's] impairment(s) and how it affects [her] *ability to work*." 20 C.F.R. § 416.913(d) (emphases added). These "other sources" include "medical sources" such as nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and therapists, as well as "non-medical sources" such as relatives, educators, and social welfare agency personnel. 20 C.F.R. § 416.913(d).

The factors applicable to the evaluation of medical opinions from "acceptable medical sources," specified in 20 C.F.R. § 416.927(d), "can be applied to opinion evidence from "other

5

sources" as well. Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939. These factors include the following: how long the source has known, and how frequently the source has seen, the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a speciality or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. *Id*. "Not every factor for weighing opinion evidence will apply in every case." *Id.*

SSR 06-03p further clarifies, with reference to opinions from "other sources" (i.e., sources that are not "acceptable medical sources"), that "[a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources" … *when such opinions may have an effect on the outcome of the case*." *Id.* (emphasis added). At the same time, the Commissioner "is not required to discuss evidence that is neither significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *see also Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (the Commissioner "need not discuss *all* evidence;" rather she must explain why "significant probative evidence has been rejected"); *Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995) (an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered).

### B. Analysis

Here, the ALJ found Plaintiff had severe impairments, namely, abdominal pain, anxiety and depression, but was not disabled because she could perform her past relevant work. AR 13; 16. MFT Robert Stuckey submitted "other source" evidence in the form of a letter, in support of Plaintiff's disability claim. AR 411. Plaintiff now contends that Mr. Stuckey's "professional

6

opinion indicates that [Plaintiff's] mental impairments are far more severe than the ALJ's findings," and the ALJ erred in not referencing the letter in his decision. Doc. 19, p. 7.

The entirety of Mr. Stuckey's August 28, 2010 letter, which is unsigned, is as follows:

> Janilyn Rose was referred to me by a patient of mine. She lives in Rosemond (Kern. Co.) and I first met her in my office April 14, 2010 but had spoken to her a few times before this date and did much of the intake by phone. Since then, I have talked with her about her symptoms and discussed her efforts to cope and to best deal with the issues.
>
> She presented as an aware, insightful bright person that was dealing with a wide range of stressors. These stresses involved the death of family members, her illness and disability, and other losses and emotional events and problems. The health issues started in 2005 with serious kidney problems, sepsis, bacterial infections, parasites and dysfunctional uterine bleeding for 24 months from 2007 to 2009. Her last day of work was December 21, 2007. She filed for disability during this two year period (September 2008) and from June 2009 to December 2009 the bleeding stopped and her condition improved. Then again in January of this year her condition declined with the increase in panic attacks, anxiety, depression, decomposition, infections, concentration problems, chronic fatigue, pain, malaise, and this disease process effecting several bodily functions [sic].
>
> She is concerned about psychoactive drugs because of side effects and increased risk if taken. Her system does not react well to drugs, except for Ativan at times. I am concerned about suicide during the worst parts of her cycles, and the fact that she is isolated where she lives and she needs a medical and neurological work up because the range and serious nature of her symptoms [sic.]. DES syndrome, sepsis survivor, high cortisol levels, elevated monocytes all seem to indicate immune system disorders. (Over the past 43 years I have had a variety of patients with AIDS, Lupus, Valley Fever, and chronic fatigue syndrome).
>
> I feel strongly that she should be on disability until we can sort out the risks for DES exposed people, and the very dramatic cycles of serious physical and emotional illness.

Under Social Security regulations, the ALJ could have considered Mr. Stuckey's opinion in assessing "the *severity* of [Plaintiff's] impairment(s) and how it affects [her] ability to work" (although not for purposes of establishing the *existence* of any medically determinable impairment(s)). 20 C.F.R. §§ 416.913(a) and (d). A review of Mr. Stuckey's opinion reveals,

7

however, that it is highly general and conclusory. AR 411. It does not specify the nature and frequency of his interactions with Plaintiff; it does not reference any treatment notes; it does not include any specific professional observations, diagnoses, prognoses, and/or functional findings; and, most importantly, it contains no supporting evidence and/or rationale(s) for its assertions and conclusions.[4] For example, while Mr. Stuckey notes that he is "concerned about suicide during the worst parts of [Plaintiff's] cycles," he does not explain what evidence his concern is based on, he does not specify the level of risk based on his professional observations and experience, and he fails to identify what, if any, contingency plan he has put in place to ensure that Plaintiff can get emergency help as needed. Finally, Mr. Stuckey's opinion is not consistent with other evidence in the record. For instance, Mr. Stuckey mentions DES Syndrome as a source of Plaintiff's problems (with no explanation as to its relevance and significance), when Plaintiff's medical records reflect no diagnosis of, or treatment for, DES Syndrome. AR 411.

Instead of Mr. Stuckey's opinion, the ALJ relied on the opinion of the psychiatric consultative examiner, Dr. Ahmad Riahinejad, Ph.D., a licensed psychologist, giving it "significant weight as it is generally supported by the entire record as a whole." AR 15. Dr. Riahinejad conducted a mental examination of the Plaintiff and provided a relatively detailed report assessing how Plaintiff's mental impairment of "Depressive Disorder with Anxiety" affected her functioning. AR 277-280. He determined that Plaintiff had a global assessment of functioning (GAF) score of 65, indicating mild symptoms. Dr. Riahinejad found that Plaintiff's intellectual functioning was in the average range; memory was intact; concentration and attention

---

[4] With respect to the functional effects of Plaintiff's impairment, Mr. Stuckey simply asserts, without any cogent explanation or specific functional findings, that he "strongly feels that she should be on disability," until her problems are sorted out. AR 411. However, as Plaintiff concedes, the ultimate issue of disability is governed by an administrative framework and is reserved for the Commissioner to make. Doc. 19, p. 7; *see* 20 C.F.R. § 404.1527(d)(1) ("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"); 20 C.F.R. § 404.1527(d)(3) ("[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner"); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[a] disability is an administrative determination of how an impairment, in relation to education, age, technological, economic and social factors, affects ability to engage in gainful activity").

span were fair; fund of knowledge was average; and insight and judgment were fair. Dr. Riahinejad opined that Plaintiff is able to understand, remember, and carry out simple and repetitive instructions but has mild difficulty in understanding, remembering, and carrying out complex and detailed instructions. He further found that Plaintiff is able to accept instructions from a supervisor and relate with coworkers. AR 277-280.

While Social Security regulations provide that "acceptable medical sources" are the "most qualified health care professionals," at times, after applying the factors for weighing opinion evidence, an opinion from an "other" medical source (i.e., not an "acceptable medical source") may be more probative than an opinion from an "acceptable medical source." SSR 06-03p, 2006 WL 2329939. This may happen when, for example, the "other" medical source has provided better supporting evidence and a better explanation for his or her opinion than the relevant "acceptable medical source." *Id.* Mr. Stuckey, however, does not provide "better supporting evidence" or "a better explanation for his opinion" than Dr. Riahinejad; indeed Mr. Stuckey's opinion completely lacks supporting evidence and any rationale for his opinion. While he states that he "talked with Plaintiff and discussed her efforts to cope and to best deal with issues," Mr. Stuckey's opinion lacks specific professional observations and functional findings, and is not consistent with the medical record. AR 411. In sum, applying the factors specified in SSR 06-03p for weighing opinion evidence from "other medical sources," Mr. Stuckey's brief, generalized letter is neither "significant nor probative." *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Therefore, the ALJ did not err in not referencing Mr. Stuckey's opinion in his decision. *Id.*

Even assuming, *arguendo*, that the ALJ erred in failing to specify the weight, if any, he gave to Mr. Stuckey's letter, any error is harmless because the letter is inconsequential to the ALJ's RFC findings and ultimate determination that Plaintiff was not disabled. *See Curry v.*

*Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding that errors that are inconsequential to the ultimate resolution of a claimant's disability claim may be found "harmless"); *see also Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

### 2. The ALJ's Findings Regarding Plaintiff's Subjective Symptom Testimony

Plaintiff next argues that "[t]he ALJ failed to articulate legally sufficient reasons for rejecting [Plaintiff's] testimony." Doc. 19, p. 14. The Commissioner responds that (1) "the ALJ gave Plaintiff the benefit of the doubt in finding that she had some limitations and rejected the opinions of State agency physicians that she had no severe mental or physical impairments;" and (2) "the ALJ gave valid and sufficient reasons, supported by substantial evidence in the record, for discrediting her allegations that were inconsistent with his RFC finding." Doc. 21, p. 8.

#### *A.    Legal Standards for Evaluating a Claimant's Credibility*

"Generally a claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (2001). "For this reason, the ALJ may not reject the claimant's statements regarding her limitations *merely* because they are not supported by objective evidence." *Id.* (citation omitted) (emphasis added). Nonetheless, in assessing the claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation," considering factors such a lack of cooperation during consultative examinations, a tendency to exaggerate, inconsistent statements, an unexplained failure to seek treatment, inconsistencies between the testimony and conduct; and inconsistencies between daily activities and the alleged symptoms. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (1996); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Finally, "[i]f the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court

to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Barnhart*, 278 F.3d at 958. In other words, the ALJ "must give specific, convincing reasons for rejecting a claimant's subjective statements." *Tonapetyan*, 242 F.3d at 1149; *also see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (absent evidence of malingering, the ALJ must offer "clear and convincing" reasons for rejecting a claimant's subjective complaints regarding the severity of symptoms). If the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Barnhart*, 278 F.3d at 959; *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) ("[f]indings as to credibility should be closely and affirmatively linked to substantial evidence").

### B.     Plaintiff's Statements

At the disability hearing, Plaintiff testified that she had scheduled several upcoming doctors' appointments in order to strengthen her disability case, because "right now there's really nothing in there that would warrant [a finding of disability]." AR 22. Plaintiff added, "[t]he doctors are still trying to find out a diagnosis about me." AR 22. Plaintiff explained that "[t]here's been basically a cascade of problems from head to toe and that's the problem that the doctors are having giving me a definitive diagnosis, because they're numerous. They affect my whole body system, mentally and physically and emotionally." AR 25. Plaintiff testified that her current primary health care provider was Nurse Practitioner Robin Schaefer. AR 26. Plaintiff noted, "[b]asically, Robin Schaefer told me, she's been working with me wonderfully, she says, I'm going to put you on the show, Mystery Diagnosis, because we just can't find out what's wrong . . . [I]t's complicated. It's not clear cut that this is wrong with me, or that is wrong with me. It's a lot of different things that emotionally have just kind of paralyzed me, basically." AR 27. Plaintiff alleged that she had experienced menstrual bleeding every day for two years straight, and was drained to the point that she could not get out of bed. AR 26. Plaintiff further

alleged that she had stopped working because of concentration problems and fainting, as residual effects from her prior sepsis infection. AR 26. Finally, Plaintiff testified that she was not capable of performing her past relevant job. AR 25-26.

In her disability application, Plaintiff stated that the conditions that limited her ability to work were dysfunctional uterine bleeding, PTSD, depression and anxiety. AR 99. As to how her conditions limited her ability to work, Plaintiff stated: "I have trouble walking, lifting, thinking, and concentrating. I have low blood pressure to the point where I pass out. My vision is affected. My energy is depleted. I sleep for about 12 hours a day. I can't exercise." AR 99. Plaintiff further stated that she did not need help in "personal care, hygiene or upkeep of a home," AR 82, and that she walks her dog and waters the flowers if she is not too tired. AR 129-131. She stated that "I don't enjoy doing anything anymore. It's just too difficult to enjoy anything." AR 133. In a "Personal Account of Disability," dated September 7, 2009, Plaintiff wrote that "[a]fter ruling out psychological impairment, which I personally think was secondary to my condition, I am still not sure of my medical situation. To date, all test[s] have been inconclusive. I had menstrual bleeding for 2 years straight and [that] just stopped last month (7/09) for the first time. I have noticed an improvement in my condition but still experience some … problems today. While not all at the same time, they seem to come and go at intermittent times." AR 398. Plaintiff continued, "my personal account of these issues seems to be caused [sic] by my sepsis and improper coagulation and flow of blood. I seemed to be doing ok until the onset of bleeding and then during the 2 years of bleeding is when I experienced the majority of my health issues. Now that the bleeding has subsided, I am noticing some improvement." AR 398. Plaintiff concluded, "I do feel that I do have some serious neurological and cognitive dysfunction … and continue to be severely fatigued. I have learned to adjust my living accordingly but I know that I cannot continue to survive in this manner without assistance." AR 398.

### C. The ALJ's Stated Reasons for Discounting Plaintiff's Testimony

The ALJ did not fully credit Plaintiff's testimony regarding the severity of her symptoms and the extent to which they limited her functioning. Rather, the ALJ found that Plaintiff's testimony was not credible to the extent that it was inconsistent with his RFC assessment that she could perform low-skilled work at the medium exertional level. AR 14.

The ALJ noted that Plaintiff testified that she experienced disabling symptoms of systemic pain, lack of concentration, protracted menstrual bleeding and an inability to get out of bed. AR 14; 25-26. The ALJ cited multiple reasons for not fully crediting this testimony: (1) that Plaintiff had sought only routine, conservative treatment and had not required any aggressive interventions such as surgery or repeated emergency room visits; (2) that Plaintiff's daily activities are not consistent with her complaints of totally "disabling symptoms and limitations;" and (3) that Plaintiff's subjective complaints were inconsistent with the medical record, which, instead, supported his RFC finding. AR 14-16. Upon a review of the ALJ's analysis and the record as whole, the Court finds that the ALJ provided "clear and convincing" reasons, supported by substantial evidence in the record, for discounting Plaintiff's subjective statements. *Rollins*, 261 F.3d 853, 857 (9th Cir. 2001).

While Plaintiff complained of disabling symptoms, including an inability to get out of bed, a protracted period of menstrual bleeding, and a lack of concentration, Plaintiff also emphasized that her doctors had been unable to pinpoint any objective, medical basis for her symptoms (to the point that her primary care provider described her as a candidate for the show, "Mystery Diagnosis"). AR 22, 25, 27. It was in this context that the ALJ noted that, despite Plaintiff's ongoing symptoms and allegations of disability, the medical record reflected "no evidence of aggressive treatment such as surgery or continuous emergency visits." AR 14. The ALJ's stated reason for discounting Plaintiff's testimony, i.e., that there was no evidence of any

13

treatment other than conservative care, is specific, and clear and convincing. Not only is the existence of a medically determinable physical or mental impairment, i.e., one based on objective medical abnormalities, a prerequisite for a finding of disability, but a claimant experiencing totally disabling symptoms would not usually be expected to be on a conservative course of treatment. *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment"); *de Santacruz v. Astrue*, 2012 WL 2264270, *5 (C.D. Cal. June 18, 2012) (in discrediting claimant's subjective symptom testimony, ALJ properly considered discrepancy between claimant's subjective complaints and the nature and extent of the treatment obtained). The ALJ's reasoning is also supported by substantial evidence, as the medical record does not demonstrate that Plaintiff required sustained or aggressive treatment for the period during which she allegedly was disabled.

An ALJ may not find that a claimant's adherence to a conservative course of treatment undermines her claims of disabling symptoms when the record shows that the claimant had been denied, or had not sought, requisite treatment because she could not afford it. *See Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995), citing *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) (holding that "[i]t flies in the face of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him"). The case at hand is different, however, in that Plaintiff does not allege that she could not afford the treatment she needed. Rather, Plaintiff alleges that her treating health care providers could not determine what, if anything, she was suffering from, and, as a result, did not prescribe any non-routine treatment.[5]

---

[5] Plaintiff states in documents she submitted in support of her application that she would like to see a "specialty doctor who is more informed on the risks to [her] health as a sepsis survivor and DES exposed individual," but that she cannot afford to pay for such a consultation independently. Plaintiff states that an "expert medical evaluator" at

Doc. 19, p.13 (Plaintiff's impairment "has not been pinpointed," and, hence, "any expectation of surgery or more aggressive treatment is unreasonable").  Nor, as the ALJ noted, did Plaintiff need to repeatedly seek emergency treatment.  AR 14.  In discounting Plaintiff's testimony, the ALJ's properly relied on the fact that Plaintiff received conservative care for the period of alleged disability.

Next, the ALJ noted that Plaintiff's daily activities are "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," thereby undermining her credibility.  AR 14; *see Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's "ability to perform various household chores such as cooking, laundry, washing dishes and shopping," among other factors, bolstered "the ALJ's negative conclusions about [her] veracity"); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[e]ven where [the daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Orn v. Astrue*, 495 F.3d 625, 639 (2007) (claimant's daily activities that contradict claimant's other testimony undercut claimant's credibility).  The ALJ noted that "[t]he claimant reported that she does not need help with making meals, shopping, dressing, bathing, household chores, or walking.  In addition, the claimant reported that she has a driver's license, is able to drive, and she is managing her funds with the help of her mother."  AR 14, 278.  The ALJ reasonably concluded that these daily activities were not fully consistent with Plaintiff's allegations of total disability (for example, her testimony that she "was suffering from a lot of different things with [her] concentration and

---

Greater Bakersfield Legal Assistance told her that her "condition might be due to the fact that [she] was exposed to DES at birth along with the fact that [she] is a sepsis survivor."  AR 399, 407.  However, there is no evidence in the medical record that such a specialist consultation and/or treatment was medically indicated and/or recommended by an acceptable medical source.

    Plaintiff was referred to a psychiatrist and had an extensive mental health evaluation.  AR 406, 397, 305, 139. Plaintiff states in documents submitted in support of her application, that her "case was not severe enough to receive treatment" because more serious cases of schizophrenia and bipolar disorder took priority.  The record is unclear as to the basis of the psychiatric referral for Plaintiff.

15

fainting" and that her bleeding "pretty much drained [her] system down to the point where [she] couldn't even get out of bed"). AR 26; *see Molina*, 674 F.3d at 1113 ([t]he ALJ could reasonably conclude that Molina's activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks"); *Bra*y, 554 F.3d 1219, 1227 (9th Cir. 2009); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("It is true that Rollins' testimony was somewhat equivocal about how regularly she was able to keep up with all of [her daily] activities, and the ALJ's interpretation of her testimony [i.e., that it was inconsistent with her claims of total disability] may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it.").

Finally, in discounting Plaintiff's testimony, the ALJ noted that Plaintiff's subjective symptom testimony is not supported by the record as whole (the ALJ found that his RFC determination was more consistent with the medical record). The ALJ's reasoning is specific and convincing, and supported by substantial evidence in the record. No acceptable medical source opined that Plaintiff was unable to work and her psychiatric and internal medicine consultative examinations did not reveal any significant limitations. AR 277-280; 282-288; *see Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (finding probative the fact that no doctor "expressed the opinion that [claimant] was totally disabled"). Moreover, Plaintiff's protracted menstrual bleeding was found to be a perimenopausal symptom and eventually stopped. AR 261; 398. While subjective complaints cannot be rejected on the sole ground that they are not fully corroborated by objective medical evidence, medical record evidence is still a relevant factor in determining the severity of the claimant's symptoms and their disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ properly based his credibility

determination, in part, on the fact that Plaintiff's testimony was not consistent with the medical evidence.

In sum, the ALJ's stated reasons for discounting Plaintiff's testimony are specific, clear and convincing, and his credibility finding, in turn, is free of legal error and supported by substantial evidence in the record.  *See Tonapetyan*, 242 F.3d at 1149; *Barnhart*, 278 F.3d at 959.

**Conclusion**

Based on the foregoing, the Court finds that the ALJ's decision is based on proper legal standards and is supported by substantial evidence in the record as a whole.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Janilyn Rose.

IT IS SO ORDERED.

Dated:   **September 19, 2013**               **/s/ Gary S. Austin**
                                               UNITED STATES MAGISTRATE JUDGE